STATE OF NORTH CAROLINA v. GORDON BROADNAX

No. 7117SC762

(Filed 29 December 1971)

1. Criminal Law § 166— abandonment of assignment of error

An assignment of error not brought forward and argued in the brief is deemed abandoned. Court of Appeals Rule No. 28.

2. Assault and Battery § 15— felonious assault — self-defense

In a prosecution for felonious assault, the trial court erred in failing to instruct the jury on self-defense where defendant's evidence tended to show that the assault victim went to defendant's home at 2:00 a.m. and refused to answer when asked what he wanted but glared menacingly at defendant, that when the victim refused to leave defendant got his shotgun and ordered him to leave, that the victim put his hand in his pocket and began advancing on defendant, that defendant shot him, and that the victim had been involved in an argument with a guest of defendant's earlier in the evening and had displayed a "hawk bill" knife.

APPEAL by defendant from *Seay, Judge,* 21 June 1971 Criminal Session, Superior Court of ROCKINGHAM County.

Defendant was charged with assault with a deadly weapon with felonious intent to kill, inflicting serious injuries, not

resulting in death. He entered a plea of not guilty. The jury returned a verdict of guilty of assault with a deadly weapon (a firearm) inflicting serious bodily injury. From judgment entered on the verdict, defendant appealed.

*Attorney General Morgan, by Assistant Attorney General Hafer, for the State.*

*Gwyn, Gwyn and Morgan, by Melzer A. Morgan, Jr., for defendant appellant.*

MORRIS, Judge.

[1] Defendant's first assignment of error is directed to the sufficiency of the evidence to be submitted to the jury. No motions for dismissal as of nonsuit were made at the trial, but by this assignment defendant requests that the sufficiency of the evidence be considered on appeal under the provisions of G.S. 15-173.1. He does not bring forward this assignment of error and argue it in his brief. It is, therefore, deemed abandoned. Rule 28, Rules of Practice in the Court of Appeals of North Carolina.

[2] By the next assignment of error, defendant contends that the trial tribunal committed prejudicial error in failing to instruct the jury on self-defense. We agree.

The evidence for the State tends to show that the prosecuting witness, Samuel P. Roberts (Roberts), went to defendant's home to purchase a drink of whiskey about 10:30 p.m. He and two friends were on their way to a dance. They stayed at defendant's home about 30 minutes, left, and went on to Eden where the dance was supposed to be. When they arrived, the place was closed, and nothing was going on. They "fooled around" a while and headed back toward Reidsville. They saw the lights were still on at defendant's house, and Roberts suggested that they stop so he could get another drink. He had had nothing to drink since the drink he purchased from defendant earlier in the evening. The time of the second visit was approximately 2:00 a.m. Roberts went in the house alone. Defendant and his wife were there and one Peter McGee who was lying on the couch. Roberts ordered another dollar drink and gave defendant a five dollar bill. Defendant contended he did not owe Roberts any change and an argument ensued. De-

fendant went through a door, came back and stuck a single barrel shotgun through the door and shot Roberts in the left leg. Defendant then ran out from behind the door, called Roberts a dirty name, raised the gun over his head saying "I am going to finish killing you." Roberts grabbed the gun and shoved defendant in the stomach and hit him on the head. When he started to hit defendant again, defendant's wife hollered, so Roberts threw the gun down. Defendant then came up and hit Roberts in the head with a whiskey bottle. Roberts felt himself "giving out" so he left the house and went to the car. Roberts had no weapon of any sort that night.

Roberts' companion, Gaston, corroborated Roberts' testimony adding that he did not go in defendant's house with Roberts on the second visit but did go in after a short while to see what was detaining him. When he walked in, defendant and Roberts were arguing over some money. Defendant went through the kitchen to the living room and came around through another door "and I saw the door cracking open and I told Sammy to watch out, after about that time he shot him." Gaston testified that Roberts did not have anything in his hands.

The defendant and his wife testified. Their evidence tended to show the following: On the night in question defendant was having a fish fry. Shortly after 11:00 p.m. Roberts and his friends came by. The invited guests were eating fish and having a good time. Roberts was not invited. Defendant told him he could come in if he would act like other people. Roberts was not in the house five minutes before he wanted to pick a fight with a guest over two dollars he said the guest owed him. Defendant told Roberts that if the guest owed him two dollars, he, defendant, would give it to Roberts. Whereupon Roberts took out a "hawk bill" knife and the guest said he would leave rather than get in trouble. Whereupon the guest went to his car. Roberts followed him, the guest left. Defendant told Roberts to go away and "don't come back." Shortly after 2:00 a.m. Roberts returned. He and "the other boy" came in. When defendant asked what he wanted Roberts just stood there "looking at me like he was going through me." Defendant told him to get out. "He kept looking at me like he was going to do something to me and I kept raising my voice and telling him to get out of my house." Defendant did not sell him any liquor. Roberts

did not leave and defendant went back to the bedroom and got the shotgun. He was standing about four feet from Roberts. He cocked the gun and told Roberts two or three times to get out. "He put his hands in his pocket like he was drawing to cut me or something and that is why I shot him. He made a move toward me, that is when I shot him. I did not try to kill him, but I wanted him to know that I would. After I shot him, he still would not get out and I did not have but the one shell in the gun and it was a good thing. So I said I will knock you out of the door if you don't get out and that is when we got to shuffling with it and he hit me on the head with it after he took it away from me . . . "

Defendant contends that the court should have charged the jury on self-defense. We think this assignment of error is a valid one.

The facts are not dissimilar to those in *State v. Lee,* 258 N.C. 44, 127 S.E. 2d 774 (1962). There the evidence for the State was that the prosecuting witness went in defendant's store to buy some ice cream. While a clerk was dipping up the ice cream, defendant, owner of the store, came up and struck the prosecuting witness on the head with a stick saying, "I told you to stay out of here." The defendant's evidence was that the prosecuting witness came in the store about midnight and wanted to buy some beer. Defendant told him it was after hours and he could not sell him beer. Defendant told him this at least twice but prosecuting witness replied "I am going to have some beer" and was coming around the counter. "He acted as if he was coming around the counter toward me when I hit him. . . . The reason I hit him is because I wouldn't sell him beer, and I thought he was coming on me, and I did it to protect myself." There the court held the evidence sufficient to require a charge on self-defense.

The evidence here is even stronger. Here defendant's evidence would permit a jury to find that after two o'clock in the morning, Roberts went to defendant's home; refused to answer when asked what he wanted but glared at defendant menacingly. When he refused to leave, defendant got his shotgun, cocked it and ordered Roberts out. Roberts refused to leave but put his hand in his pocket and began advancing on defendant. Earlier in the evening, Roberts had been involved in an argument with a guest of defendant's and had displayed a "hawk bill" knife.

The evidence is sufficient to entitle defendant to have his plea of self-defense passed upon by the jury under proper instructions by the court.

Defendant's other assignments of error are also directed to the charge of the court. Since there must be a new trial, there is no need to discuss them.

New trial.

Judges CAMPBELL and PARKER concur.